**David Wilbur POWELL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21076.**

United States Court of Appeals
Ninth Circuit.

March 15, 1967.

Donald C. Carroll, San Francisco, Cal., for appellant.

Richard C. Gormley, U. S. Atty., Jo Ann D. Diamos, Philip Fahringer, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before POPE, HAMLEY and BROWNING, Circuit Judges.

POPE, Circuit Judge.

The appellant was indicted and found guilty of importing into the United States from Mexico, at Nogales, Arizona, approximately one and six-tenths grams

of heroin, a narcotic drug, in violation of 21 U.S.C. § 174.

Upon this appeal it is contended that the evidence was insufficient to show that the exhibit containing the alleged drug was actually found on the person of the defendant when he was arrested following a search at the border; and that there was insufficient evidence to show, assuming the exhibit was taken from the defendant, that its contents was actually a narcotic drug.

We think the proof here was sufficient to sustain the verdict on both these points.

The proof was that during a border search of the appellant as he was entering the United States at Nogales he was required to empty his pockets. He pulled from his pocket a package of cigarettes. The customs inspector noticed folded white papers in among the cigarettes. He found four of these. On weighing and testing, these were found to contain 1.6 grams of heroin hydrochloride, a derivative of opium. The possession and whereabouts of the drug was adequately traced from appellant through the weighing and testing facilities of the customs officials whose identifications and descriptions were adequate. The contentions here made as to insufficiency of evidence are without any foundation whatever.

Another contention made is that the court erred in rejecting appellant's motion to disclose the identity of the Government's informer. There is no basis whatever for that contention.

It appears from the testimony of agent Washington that he may have received some information to the effect that appellant and his companion were on the Mexican side of the boundary on the day when the arrest was made. The witness was being asked when he saw appellant there on that date. The complete statement was as follows: "Q. And how do you know the time of this? A. I received a call about 4:00 P.M., a few minutes after 4:00, that two Americans—", the answer ended there. If it be assumed that this means that some one informed Washington that appellant and his companion were in Mexico, the claim that appellant was improperly denied the name of some assumed informer is completely frivolous. It does not appear that the name of any informer was known.

But, even assuming that there was such a person and his name was known, there is no duty to disclose any such informer. The Government has no duty of disclosure in such a case. The rule was stated in Velarde-Villarreal v. United States, 9 Cir., 354 F.2d 9, 14, (dissenting opinion) as follows: "It is established that the Government is not required to reveal to an accused the identity of one who furnishes 'information of violations of law to officers charged with enforcement of that law' ", (citing Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639, which in turn cites Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 83 L.Ed. 151.[1]

A rule that any person who merely informs the officers of the commission of a crime must be disclosed to the accused as the one responsible for his arrest would serve to encourage the criminal to wreak his vengeance on the informer. Such information might be hard to come by; and such a rule would seriously

---

1. Appellant overlooks the distinction noted in United States v. Conforti, 7 Cir., 200 F.2d 365, 367, as follows: "This distinction between one who plays a part in a criminal transaction and one who is a mere informer is well illustrated in Sorrentino v. United States, 9 Cir., 163 F. 2d 627. [The court there stated at p. 628]: 'If the person whom Grady called an informer had been an informer and nothing more, appellant would not have been entitled to have his identity disclosed; but the person whom Grady called an informer was something more. He was the person to whom appellant was said to have sold and dispensed the opium described in the indictment. Information as to this person's identity was therefore material to appellant's defense, and appellant was entitled to a disclosure thereof.' "

hamper accepted police investigative techniques.

If there was an informer in this case, there is nothing to show that he was more than a mere observer, not a participant. As the appellant puts it in his brief: "The facts in this case simply have not been developed to a point where a finding of fact can be made." It would be unthinkable to call for a reversal here in the complete absence of facts to support appellant's claim.

Approximately two weeks before the trial date appellant filed a "motion to disclose identity of informer." It contained a "Memorandum in support" of the motion. The motion was not supported by any affidavit or other proof. The memorandum simply asserted: "Petitioner's counsel must have the informer's name to show that (1) informer possibly put the illegal heroin in the package of cigarettes; (2) that the informer possessed the cigarette package for approximately two hours; (3) that the informer had access to heroin; (4) that petitioner forcibly took cigarettes from the informer; (5) that the package of cigarettes originally belonged to petitioner; (6) that the petitioner had no knowledge of the fact that heroin was in the cigarette package. * * * But from the facts as ascertained by petitioner's counsel, we feel that the above mentioned person called informer must have been the person who notified the Border authorities." Appellant testified. His attempted defense below, and here, was that he had two or more packs of Pall Mall cigarettes when he went into Mexico on the day in question. Appellant and his friend Jackson were driving in Jackson's automobile. They met two Mexican men from whom they bought some jewelry. Appellant gave each of the Mexicans a pack of cigarettes. Later a quarrel ensued between appellant and Jackson on the one hand and the two Mexicans on the other, which arose out of the Mexican's failure to produce some marijuana cigarettes for which appellant had paid them. Then appellant forcibly took back from one of the Mexicans the open cigarette pack he had been given. Appellant's defense was that the Mexican must have inserted the parcels of heroin in the pack while he had possession of it, and that when defendant recovered the pack, and put it in his pocket, he had no knowledge that these parcels had been inserted.

Neither defendant nor Jackson named these Mexicans. They disclaimed knowledge of their names. So far as the record shows, the customs agents had even less knowledge of who they were, or even whether there were any such persons. Appellant's motion asserts that he forcibly took the cigarettes from the "informer", thus suggesting that the Mexican about whom he testified was the informer. There is not the slightest showing that such was the case. Significantly, appellant made no effort whatever to ascertain whether that was, true, or possible. Three of the customs inspectors who participated in the search and arrest were called and testified. They were cross-examined by defense counsel. None were asked by such counsel whether there was an informer, or, if so, who he was.[2]

It is not unlikely that the defense wished to be able to argue its theory to the jury, based on defendant's testimony, but carefully refrained from asking the agents about an informant, knowing that the answer might well have exploded the defense,—such as that the information came through an anonymous telephone call, from a station on the American side of the line.

We find no error. The judgment is affirmed.

2. There was no question, "Did you know who was informing? Did he speak with a Mexican accent?"