UNITED STATES of America,
Plaintiff-Appellee,

v.

Alberta LLOYD, Defendant-Appellant.

No. 18193.

United States Court of Appeals
Sixth Circuit.

Aug. 30, 1968.

Richard H. Nash, Louisville, Ky., (Court appointed), for appellant.

Philip Huddleston, Asst. U. S. Atty., Louisville, Ky., for appellee; Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief.

Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.

COMBS, Circuit Judge.

Defendant-appellant, Alberta Lloyd, was convicted for possession of and selling narcotics in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). She was sentenced to five years imprisonment on each of two counts, the sentences to run concurrently.

The Government built its case through the use of an informer. On September 12, 1966, a federal narcotics agent, Albert Cook, and two Louisville police officers met in Cook's office with the informer. With Cook listening in, the informer placed a telephone call to the rooming house operated by the defendant. A female voice answered and said, "This is Bert". An appointment was made between the informer and the person on the phone for the informer to purchase some heroin.

In preparation for the appointment, the informer and his car were searched, he was relieved of all his personal ef-

fects and given some marked money. One of the officers hid in the trunk of the informer's car, and the other two followed in a separate car as the informer drove to the defendant's rooming house which was the appointed meeting place.

When the informer arrived at defendant's rooming house, he parked the car at the curb and sounded his horn. Defendant came out of the house and leaned in the car window. The officers in the following car were parked about fifty feet away and saw an exchange of objects between the informer and the defendant. The officer hidden in the trunk heard a female voice say, "Yes, here are your things," and some small talk between the parties.

The informer then drove to a nearby parking lot, followed closely by the two officers. He there turned four packets of heroin over to the officers. A search of his person and car revealed nothing else in his possession.

During cross-examination of Government witnesses, defense counsel made several attempts to obtain the informer's name. Following a colloquy at the bench, the District Judge ruled that the informer's identity was privileged information. Defendant contends here that it was error to withhold this information since the informer's testimony would have been relevant and helpful to her defense. It is asserted that the informer was in effect a witness for the prosecution whom defendant had no opportunity to cross-examine. Complaint is also made that the United States Attorney was permitted to inquire of defendant about her previous conviction for shoplifting and to argue to the jury that it was a felony when, in fact, under Kentucky law shoplifting is a misdemeanor.

We are of the opinion that the case must be remanded for determination of the question whether disclosure of the informer's identity would have been relevant and helpful in the defense of the accused.

The identity of persons supplying the Government with information regarding the commission of crimes usually is privileged and the Government may refuse to divulge it. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639 (1957); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L. Ed. 151 (1938); In re Quarles and Butler, Petitioners, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895). The rationale for the rule is that citizens are more likely to communicate to law enforcement officials their knowledge of criminal activities if their anonymity is preserved. The privilege of the Government to withhold the identity of informers is especially important in the enforcement of narcotic laws. In the illegal sale of narcotics there is usually no complaining witness. The transaction is always consensual; only the pusher and the buyer are involved. The Government must of necessity rely on informers, and an informer is effective only so long as his identity is not known. A court is reluctant therefore to require that an informer's identity be revealed. But the privilege is not absolute. The Supreme Court in *Roviaro* said:

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 628.

The facts of *Roviaro* were very similar to those in this case. Two narcotics officers searched an informer, "John Doe," and his car, and provided him with marked money. One officer got in the trunk of Doe's car and the other followed in another car. After a rendezvous with Roviaro, Doe and Roviaro drove around for awhile. Doe stopped his car and Roviaro got out, picked up a package near a tree, returned to the car, and made an exchange of objects with

Doe. Roviaro left and Doe drove on. When Doe later stopped, the officers searched him and the car and found only a package of narcotics.

In reversing Roviaro's conviction, the Supreme Court disclaimed any intention to lay down an absolute rule, but said:

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62, 77 S.Ct. at 629.

This is not a case where the informer merely furnished a tip which helped police officers obtain a warrant. He set up and participated in the illegal transaction. He was the key witness. In such a situation, the courts have more often required disclosure of the identity of the informer. See Gilmore v. United States, 256 F.2d 565 (5th Cir. 1958); Portomene v. United States, 221 F.2d 582 (5th Cir. 1955); United States v. Conforti, 200 F.2d 365 (7th Cir. 1952); Sorrentino v. United States, 163 F.2d 627 (9th Cir. 1947); United States v. Wilson, 20 F.R.D. 569 (S.D.N.Y.1957); J. Wigmore, Evidence § 2374 (McNaughton rev. 1961).

The defendant was not arrested until more than three months after the alleged offense. She claimed to have no recollection of the offense here involved but admitted that she often delivered packages of cosmetics to people for one of her roomers, Bert Davis. Neither Davis nor his wife was called to testify because, according to defendant, they had disappeared and she had no knowledge of their whereabouts.

On this state of the facts, the informer's testimony might have been relevant and helpful to the defendant. He was in position to throw light on defendant's contention that she was the unwitting agent of another. His testimony and demeanor on the witness stand could have been helpful to the jury in making a determination whether defendant's story was true. In the words of the Fifth Circuit in Gilmore v. United States, *supra*:

"As Anonymous [the informer] was a principal actor before and during this performance, who he was and what he knew was certainly material and relevant. In this testimony there might have been seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure." 256 F.2d at 567.

The defendant should have been given an opportunity to establish the relevancy of the informer's testimony and whether he was available as a witness. It is noted that no request was made for disclosure of the informer's identity until after the trial had commenced.

We call attention to United States v. Jackson and Ruth Jackson, 384 F.2d 825 (3rd Cir. 1967), where the trial judge held an in camera hearing to determine whether disclosure of the informer's identity was required as an aid to the truth-finding process. In *Jackson*, it was held as to one of the defendants that the informer's testimony would not have aided the defendant's cause. In regard to the other defendant in that case, it was found that the informer had disappeared and the United States Marshal was unable to locate him. It was held, therefore, as to both defendants, that it was not necessary to reveal the informer's identity.

 We find no merit in the second assignment of error. It is true that the defendant was questioned by the United States Attorney about a prior conviction for shoplifting, and this offense was erroneously referred to by him as a felony when under Kentucky

law it is only a misdemeanor. K.R.S. 433.230. But, a witness may be impeached by inquiry into prior misdemeanor convictions if these crimes involve moral turpitude. United States v. Bell, 351 F.2d 868 (6th Cir. 1965). Shoplifting, whether it be labelled as felony or misdemeanor, involves moral turpitude. 58 C.J.S. Moral Turpitude p. 1207; Morasch v. Immigration and Naturalization Service, 363 F.2d 30 (9th Cir. 1966). Since the jury was informed of the nature of the crime, the United States Attorney's reference to it as a felony rather than a misdemeanor could not have been prejudicial to the defendant.

The case is remanded to the District Court with instructions that the District Judge hold an in camera hearing for the purpose of determining whether disclosure of the informer's identity would have been relevant and helpful to the defendant in presenting her defense, and whether the informer was available as a witness. The District Judge's findings on these questions will be reported to this Court. In the meanwhile, we retain jurisdiction of the appeal.